FILED

08/29/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0642

DA 15-0642

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 212

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

ROBERT LEE OTTO,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC 14-324
Honorable Greg Pinski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Chief Appellate Defender, Haley Connell Jackson, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

          John Parker, Cascade County Attorney, Joshua A. Racki, Deputy Cascade
County Attorney, Great Falls, Montana

Submitted on Briefs:  July 19, 2017

Decided:  August 29, 2017

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant, Robert Lee Otto (Otto), pled guilty to one count of Sexual Intercourse Without Consent and was sentenced by the Eighth Judicial District Court, Cascade County. He challenges his sentence on appeal, raising the following issue:

*Did the District Court violate Otto's constitutional rights by basing his sentence on his refusal to answer a question in the presentence investigative report?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In June 2014, Great Falls police responded to the Rescue Mission to locate a 13-year-old girl, D.R., who had run away from her home in Shelby, Montana.[1] D.R. was found in the company of Otto, a 28-year-old male. D.R. informed police she had arrived in Great Falls the preceding week and had been with Otto, staying in his vehicle and tent. She acknowledged having sexual relations with Otto nearly every night, explaining that when she and Otto were engaged in vaginal intercourse, they usually stopped when it became too painful. After each attempt at vaginal intercourse failed, D.R. would perform oral sex on Otto until he ejaculated. When interviewed, Otto initially minimized his actions, but ultimately admitted to some intercourse and to "allow[ing] D.R. to give me oral sex."

¶3 Otto was initially charged with two counts of Sexual Intercourse Without Consent, and thereafter entered a nonbinding plea agreement under which he pled guilty to the count premised upon oral sex with D.R. The State agreed to dismiss the second count. The plea

---

[1] D.R. was 12 years old when she ran away, but during the week she spent with Otto she turned age 13.

agreement recommended a 50-year commitment to Montana State Prison (MSP), with 35 years suspended.[2] During the sentencing hearing, the District Court stated:

> The Court also considers that its sentence must protect the public. And this case is disturbing. The defendant, twice the victim's age, deceived and lured a young girl to run away from home, some 90 miles away, to engage in sexual intercourse.
>
> .   .   .
>
> This young victim . . . faces a lifetime of recovery from this assault. She's already been hospitalized for the psychological effects of what occurred. The physical and psychological harm Mr. Otto inflicted on this young victim will never go away.

¶4 The District Court also stated, "I am not impressed with Mr. Otto's lack of cooperation in the presentence investigation, his refusal to answer certain questions, his . . . total minimization and rationalization of his sexually predatory conduct. Mr. Otto has demonstrated to this Court no appreciation and no accountability whatsoever . . . . " Departing from the sentence recommendation of the plea agreement, the District Court sentenced Otto to a 60-year commitment at MSP, with 10 years suspended. Otto appeals.

## STANDARD OF REVIEW

¶5 If an offender is eligible for sentence review pursuant to § 46-18-903, MCA, as here, we review the sentence for legality only. *State v. Herd*, 2004 MT 85, ¶¶ 22-24, 320 Mont. 490, 87 P.3d 1017.

## DISCUSSION

---

[2] The plea agreement contained an inconsistency, recommending "A fifty (50) year commitment to the Montana State Prison with **thirty (35)** years suspended." Neither party references this discrepancy, and both argue on the assumption that the agreement recommended a sentence with 35 years suspended. (Emphasis added.)

3

¶6    *Did the District Court violate Otto's constitutional rights by basing his sentence on his refusal to answer a question in the presentence investigative report?*

¶7    Otto argues the District Court violated his rights to silence and against self-incrimination by basing his sentence, at least in part, on his refusal to answer a question in the presentence investigative report (PSI). In the "Defendant's Statement" section of the PSI, on page 3, a standard question asked, "What reason do you have for your involvement in this offense?" In response, Otto wrote, "The Defendant did not answer this question at the request of [my attorney]." Referencing the comment made by the District Court during the oral pronouncement about a failure to answer questions, Otto asserts the District Court imposed a longer sentence than recommended by the plea agreement for this reason, thereby violating his constitutional rights.[3]

¶8    The State argues Otto's unresponsive answer simply demonstrated his lack of remorse, which was properly considered by the District Court as an indicator of his attempt to (1) obscure the psychological injuries he inflicted on D.R., (2) maximize his assertion that he would successfully complete rehabilitation, and (3) minimize the danger he posed to society. The State urges us to resist examining the oral pronouncement line-by-line, and instead to consider all the relevant sentencing information considered by the District Court, including the statutory factors provided in Title 46, Chapter 18, MCA. The State further

---

[3] Otto did not object to the District Court's comment during the sentencing hearing, and seeks review of the issue pursuant to *State v. Lenihan*, 184 Mont. 338, 602 P.2d 997 (1979), or, alternatively, pursuant to the doctrine of plain error review. The State does not challenge the reviewability of Otto's claim, and we undertake *Lenihan* review. *See State v. Garrymore*, 2006 MT 245, ¶ 14, 334 Mont. 1, 145 P.3d 946.

4

asserts that Otto "was not silent, and he did not assert the privilege with respect to every aspect of his offense."

¶9 Our case law is clear—district courts cannot infringe upon a defendant's rights to silence and against self-incrimination when imposing a sentence. *See, e.g., State v. Shreves*, 2002 MT 333, ¶ 20, 313 Mont. 252, 60 P.3d 991; *State v. Cesnik*, 2005 MT 257, ¶¶ 18-25, 329 Mont. 63, 122 P.3d 456; *State v. Rennaker*, 2007 MT 10, ¶¶ 52-54, 335 Mont. 274, 150 P.3d 960; *State v. Duncan*, 2008 MT 148, ¶ 56, 343 Mont. 220, 183 P.3d 111. We once again caution sentencing courts that these rights must be protected during sentencing.

¶10 Here, we first must consider that "[a] person claiming the protection of the Fifth Amendment generally must affirmatively invoke it." *State v. Fuller*, 276 Mont. 155, 160, 915 P.2d 809, 812 (1996); (citing *United States v. Monia*, 317 U.S. 424, 427, 63 S. Ct. 409, 410-11 (1943)); *State v. Plouffe*, 2014 MT 183, ¶ 23, 375 Mont. 429, 329 P.3d 1255; *Shreves*, ¶ 11. The right can be waived if a defendant fails to assert the privilege. *Cesnik*, ¶ 19 (citing *Fuller*, 276 Mont. at 160, 915 P.2d at 812). At no point during the sentencing process did Otto affirmatively invoke his rights to silence and against self-incrimination. During his plea colloquy, Otto answered each of the District Court's questions and provided information about his crime. When completing the PSI process, Otto answered many questions, including those about his crime:

> ***In your own words, what did you do to get arrested on this charge?***
> I had an online relationship with the victim for two months . . . I allowed the victim to perform oral sex on me in my tent.

5

(Emphasis in original.) At no time did Otto affirmatively invoke his right to remain silent when he answered the PSI questions. Even his "non-answer" to the subject question did not specifically invoke a constitutional right, but rather simply stated he was not answering at his attorney's request.

¶11 District courts "may consider any relevant evidence relating to the nature and circumstances of the crime, the character of the defendant, the defendant's background history, mental and physical condition, and any evidence the court considers to have probative force." *Driver v. Sentence Review Div. in the Sup. Court of Mont.*, 2010 MT 43, ¶ 17, 355 Mont. 273, 227 P.3d 1018; *State v. Collier*, 277 Mont. 46, 63, 919 P.2d 376, 387 (1996); *Rennaker*, ¶ 49; *Shreves*, ¶ 13. Here, the record demonstrates that the District Court extensively considered the relevant evidence, as reflected in excerpts of its comments, which places the contested comment into context:

> [I]n considering the nature and degree of harm [caused] by the offender, sexual intercourse without consent is one of the most serious [] offenses in our criminal justice system. Because minors are particularly [vulnerable] to sexual exploitation, the Montana Legislature has enacted heightened penalties for sex crime involving those under the age of consent.
>
> . . .
>
> Under the plea agreement, the parties agreed that Mr. Otto only would admit to having sexual intercourse without consent on the victim's 13th birthday.
>
> . . .
>
> Given the facts alleged in the Information about an ongoing sexual relationship with the victim, the Court is deeply skeptical that the sexual intercourse began on the victim's 13th birthday.

6

.  .  .

The Court's sentence must hold Mr. Otto accountable for his crime.  I am not impressed with Mr. Otto's lack of cooperation in the presentence investigation, his refusal to answer certain questions, his provision of edited and handwritten answers to other questions, and his total minimization and rationalization of his sexually predatory conduct.  Mr. Otto has demonstrated to this Court no appreciation and no accountability whatsoever for the harm that he inflicted on this victim.

The Court also considers that its sentence must protect the public.  And this case is disturbing.  The defendant, twice the victim's age, deceived and lured a young girl to run away from home, some 90 miles away, to engage in sexual intercourse.

.  .  .

This young victim . . . faces a lifetime of recovery from this assault.  She's already been hospitalized for the psychological effects of what occurred.  The physical and psychological harm Mr. Otto inflicted on this young victim will never go away.

.  .  .

The Court has considered that this is Mr. Otto's first felony, and although the Court does not find he has been accountable for the harm that he caused, the Court does recognize that he has taken responsibility for his crime, and spared the victim from further trauma at trial.

In balancing each of these factors, and weighing the sentencing policies of Montana, I do not find that the sentence recommended by the State for Mr. Otto appropriately takes into account the sentencing policy of the State of Montana.[4]

Otto's written sentence again highlighted the sentencing factors referenced in the oral

pronouncement and stated, "[a] lengthy term of incarceration will hopefully provide the

_____

[4] The record indicates that the proceedings were "recorded by mechanical stenography," with the transcript "produced by computer."  We have corrected transcription errors herein.

victim with some solace knowing that the Defendant will be harshly punished, and he will not be in a position to harm others."

¶12    It is clear, from the record, that the District Court carefully considered Montana's sentencing policies, statutory factors, and other relevant evidence in fashioning Otto's sentence.  The District Court's reference to Otto's unresponsive answer, which did not affirmatively invoke a constitutional right, was made in passing and was part of a much larger assessment of Otto's attitudes and character.  We perceive no impact upon Otto's sentence by reason of this singular comment.  Further, "a court can sentence a defendant based on lack of remorse," *Rennaker*, ¶ 49 (citing *Shreves*, ¶ 20), and the District Court based this concern on various aspects of the record.  As Otto was clearly advised in his plea agreement, "sentencing in this matter is entirely within the discretion of the presiding District Court Judge, subject only to the limits of statutory and case law."  Otto's sentence was within the statutory limits, and was supported by the totality of the District Court's appropriately stated reasons for the sentence.

¶13    Affirmed.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

8